IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-CV-02843-RBJ

TAMARA BIRCH,

    Plaintiff,

v.

T-MOBILE USA, INC.

    Defendant.

## T-MOBILE'S MOTION FOR SUMMARY JUDGMENT

Defendant T-Mobile USA, Inc. ("T-Mobile"), pursuant to Fed. R. Civ. P. 56(a), moves for summary judgment on Plaintiff Tamara Birch's claims.

### STATEMENT OF UNDISPUTED FACTS

1. Plaintiff worked at T-Mobile's Colorado Springs, Colorado Call Center. (Birch Dep., Ex. A hereto, at 9:16-25, 11:10-25, 12:1-16, T-Mobile Ex. 19).

2. Plaintiff's work at T-Mobile involved resolving customer concerns by taking calls regarding network and device issues. (Ex. A at 9:16-25, 11:10-25, 12:1-16, T-Mobile Ex. 19).

3. The job descriptions for all positions Plaintiff held at T-Mobile required her to "adjust to a flexible schedule: day, afternoon, graveyard shifts, (and) weekend shifts . . . ." (Ex. A at 13:9-25, 108:3-24, 112:1-25, T-Mobile Ex. 19-21).

4. In May of 2016, Plaintiff was promoted to Senior Specialist, Specialized Technical Care, where she continued to receive customer calls, but she was responsible for a broader range of T-Mobile products and services. (Ex. A at 13:6-20, T-Mobile Ex. 20).

5. Specialists are supervised by coaches who are responsible for, among other things, providing performance feedback and ensuring employees properly record time worked. (Ingargiola Dep., Exhibit B hereto, at 7:14-21).

6. At the Call Center, call volumes and times fluctuate, service regions change, and customer needs evolve, so shift times and numbers are reorganized often to better allocate resources and staff. (Ex. B at 26:5-13; Ellsworth Dep., Exhibit C hereto, at 13:1-7).

7. Because T-Mobile often changes or rearranges shifts, T-Mobile does not offer permanent shift assignments, part-time shifts, or part-time jobs. (Ex. C at 12:16-24, 58:20-23).

8. During the time in which Plaintiff was employed, all Call Center employees participated in realignment, a site-wide shift bidding process that occurred approximately twice per year. (Ex. B at 61:3-6).

9. Realignment was intended to structure shifts and allocate staff to meet changing business needs. (Ex. B at 26:5-13; Ex. C at 13:1-7; Randis Decl., Exhibit E hereto, at ¶ 3-5).

10. During realignment, Resource Planning identified staffing needs and listed shifts available for employees to bid into. (Ex. C at 13:1-7; Ex. A at 17:4-25; Ex. E at ¶ 3, 5, 18).

11. In order of rank, employees bid for their desired shifts, so higher-ranked employees received priority in shift selection. (Ex. A at 17:4-25; Ex. B at 26:14-21).

12. To determine bid rank, T-Mobile evaluated employees' objective performance metrics, or percent-to-goal averages such as call resolution time, and ranked employees in order of merit. (Ex. A at 17:4-25; Ex. B at 26:14-21).

13. Attendance does not impact rank for shift bids, and Plaintiff's rank was not impacted by her FMLA and ADA use. (Ex. C at 26:17-23; Ex. A at 137:1-6).

14. Mini-bids occur when a few shifts become available between regular bids, and volunteering employees are ranked and bid for the available shifts. (Ex. B at. 62:9-17).

15. Shift swaps may be initiated at any time by employees recording their shifts in the bid shift book in Resource Planning, and other employees are free to browse the book and initiate a shift swap. (Ex. A at. 23:1-10).

16. Plaintiff purportedly suffers from Post-Traumatic Stress Disorder ("PTSD") and Asperger's syndrome, a form of autism. (ECF No. 1 ¶ 14).

17. Plaintiff requested, and T-Mobile granted, the following continuous and intermittent leaves of absence during her employment:

   a. **Continuous LOA**: 12/14/17–01/04/18 (21 days).
   b. **Intermittent LOA**: 1 hour per day for 5 days per week, 02/23/18–08/12/2018 (170 days).
   c. **Intermittent LOA**: 55 hours per month, 03/09/18–08/12/18 (156 days).
   d. **Continuous LOA**: 03/28/18–04/03/2018 (6 days).
   e. **Intermittent LOA**: 85 hours per month, requested on 03/30/18 (while processing this particular request, an additional request was received and granted, rendering this request redundant).
   f. **Continuous LOA**: Requested 04/04/18 (while processing this particular request, an additional request was received and granted, rendering this request redundant).
   g. **Continuous LOA**: 04/10/18–06/14/2018 (65 days).
   h. **Intermittent LOA**: 30 hours per week, 07/08/18–10/08/18 (93 days).
   i. **Continuous LOA**: 09/14/18–12/01/18 (79 days).

(Ex. A at 67:9-15, 130:11-25, T-Mobile Ex. 12; Miles Dep., Exhibit D hereto, at 11:10-12).

18. T-Mobile never denied a leave of absence request for Plaintiff. (Ex. A at 67:9-15).

19. If an employee is absent from work without preapproval or fails to enter approved time off in the Kronos timekeeping system, she will receive a written notice in Kronos known as a TODAY code. (Ex. A at 132:10-20).

20. Plaintiff received three Formal Discussions (write-ups) because she received numerous TODAY codes; however, Plaintiff at all times remained in good standing. (Ex. A at 133:10-21, 131:13-21, 134:6-13, T-Mobile Ex. 5-7).

21. In or around March of 2018, Plaintiff complained to Joel Whitaker, a Human Resources (HR) representative, that her coach, Angel Sosa, commented on her leaves of absence, making her feel harassed and discriminated against. (Ex. A at 32:1-25).

22. T-Mobile investigated Plaintiff's complaint and concluded that Mr. Sosa's comments concerned leave parameters and reporting time worked. (Ex. C at 31:1-23).

23. Mr. Whitaker counseled Mr. Sosa and other coaches regarding appropriate and inappropriate conversations about leave use. (Ex. A at. 33:2-13; Ex. C at 31:1-23, 49:8-23).

24. In or about spring or summer of 2018, Plaintiff contacted Rob Sisler, Senior Manager of Operations Support, and complained that she felt Mr. Sosa made inappropriate comments about her FMLA use. (Ex. A at 34:2-14).

25. In July of 2018, Plaintiff asked Mr. Sosa if she could work the Weekend Wrap shift, a 9:00 a.m. to 9:00 p.m. Saturday, Sunday, and Wednesday shift. (Ex. A at 21:6-25).

26. In July of 2018, Plaintiff interviewed for a retail position, was selected for the role, but ultimately declined it due to the corresponding pay cut. (Ex. A at 109:12-25, 110:1-20).

27. In or around July of 2018, Plaintiff and Nathan Nichols, Plaintiff's fiancé and fellow T-Mobile employee, received approval to transfer to the Team of Experts ("TEX") and each received a $1,500 bonus. (Ex. A at 113:1-25, T-Mobile Ex. 13).

28. Plaintiff was advised that she was not guaranteed a specific shift if she transferred to TEX. (Ex. A at 140:1-11).

29. When Plaintiff transferred to TEX, Resource Planning assessed the shifts needing senior expert staffing, and found that two shifts were significantly understaffed with senior experts, meaning that Plaintiff and Mr. Nichols would be permitted to bid for only these two shifts. (Ex. E at ¶ 18-22; Ex. A at 41:5-7, 42:7-9). Neither shift was a Weekend Wrap. *Id.*

30. Plaintiff and Mr. Nichols were ranked, and Mr. Nichols ranked higher than Plaintiff, meaning he received priority to select his desired shift and Plaintiff was assigned to the remaining shift. (Ex. E at ¶ 24-26, Ex. A at 117:10-25, 118:1-3).

31. Plaintiff remained free to bid for her desired schedule during realignments or mini-bids or swap through the bid-shift book. (Ex. A at 120:1-25, 118:5-19, T-Mobile Ex. 14).

32. In or around early September 2018, Plaintiff complained to Julia Kujalowicz in Human Resources that she could not obtain her desired schedule, and Ms. Kujalowicz directed Plaintiff to submit her request to Broadspire, the third-party vendor who handled intake for workplace accommodations. (Ex. A at 145:6-16; Ex. C at 34:1-13).

33. On September 6, 2018, Plaintiff filed with Broadspire an accommodation request for the Weekend Wrap shift. (Ex. D at 21:17-25, 22:1-25, Birch Ex. 11).

34. Plaintiff never submitted medical documentation to support her request for a specific shift. (Birch Ex. 11, Ex. C at 21:17-25).

35. On September 13, 2018, Plaintiff complained to Ryan Davis, a Director of HR, that she was discriminated against with respect to her FMLA and ADA use and she found it difficult to obtain her desired shift. (Ex. A at 118:1-25, 119:1-25, T-Mobile Ex. 14).

36. On September 18, 2018, Plaintiff emailed Mr. Davis and asked whether any additional action had been taken to address "discrimination towards those with accommodations." (Ex. A at 118:1-25, 119:1-25, T-Mobile Ex. 14).

37. In the September 18 email, Plaintiff acknowledged "that people were spoke to about the comments," but she "lack(ed) confidence in this not being an issue moving forward as it is a companywide issue." (Ex. A at 149:15-25, 150:1-15, T-Mobile Ex. 15).

38. Plaintiff emailed Mr. Davis later that day and explained that she sought the Weekend Wrap or a permanent reduced schedule so that she would not have to face harassment and discrimination for taking leave. (Ex. A at 149:15-25, 150:1-15, T-Mobile Ex. 15).

39. Mr. Davis offered and Plaintiff accepted a 30-day assignment to the Weekend Wrap until the next realignment or mini-bid. (Ex. A at 149:15-25, 150:1-15, T-Mobile Ex. 15).

40. On September 28, 2018, Plaintiff withdrew her request for the Weekend Wrap and submitted a request for a continuous leave of absence retroactive to September 14, 2018. (Ex. D at 21:17-25, 22:1-25, Birch Ex. 11; Ex. A at 12:1-25).

41. Plaintiff would have needed to take this continuous leave of absence even if she had obtained a permanent assignment to the Weekend Wrap. (Ex. A at 51:20-25).

42. While on leave, Plaintiff worked at a bakery, and her anxiety decreased because she was not on the phone with angry customers. (Ex. A at 93:1-25, 95:1-16).

43. On December 1, 2018, Plaintiff emailed Mr. Davis and inquired about transferring to a retail store. (Ex. A at 109:20-25, 110:1-25, 111:10-20, T-Mobile Ex. 17).

44. Mr. Davis agreed to facilitate Plaintiff's transfer, but Plaintiff declined to transfer due to a pay cut in the retail role. (Ex. A at 109:2-25, 110:1-25, 111:10-20, T-Mobile Ex. 17).

45.     After two and one-half months on leave, Plaintiff returned to work on December 4, 2018. (Ex. A at 93:1-25).

46.     Upon her return, Plaintiff's supervisor was Nicole Ludvik. (Ex. A at 51:4-12).

47.     On December 5, 2018, Plaintiff "experienced severe anxiety," "could not handle" being at the Call Center, and resigned. (Ex. A at 54:10-14).

## ARGUMENT

The primary question in this case is whether T-Mobile was required to grant Plaintiff's request for permanent assignment to the Weekend Wrap shift or, alternatively, to give her a permanent reduced-hours schedule. The undisputed facts show that schedule flexibility was an essential function of Plaintiff's job. T-Mobile did not offer permanent schedules or permanent part-time positions, and shifts were assigned through a merit-based bidding process. T-Mobile repeatedly accommodated Plaintiff with time away from work, whether pursuant to the FMLA or as an ADA accommodation. T-Mobile never denied a leave request for Plaintiff. T-Mobile also granted Plaintiff's request to transfer to TEX, away from the supervisor about whom she complained. At the time of her resignation, T-Mobile had offered Plaintiff her desired schedule for a period of 30 days, until the next shift bid. She resigned only a day after returning to work from a two and one-half month continuous leave of absence, having never worked her desired shift, and with no evidence of an intolerable working environment. Plaintiff's requested schedule accommodation was unreasonable. Her claims cannot survive summary judgment because they are based on conclusory assertions, subjective feelings, inadmissible hearsay, or a mere scintilla of evidence otherwise insufficient to create triable issues of material fact.

## I.     Plaintiff Cannot Establish a Claim for Disability Discrimination.

### a.     Plaintiff Was Not a Qualified Individual.

For the purpose of this Motion, T-Mobile does not contest that Plaintiff was disabled. However, Plaintiff was not a qualified individual because even with near-constant continuous or intermittent leave, she could not work a full-time schedule or different schedules—an essential function of her job—as required by T-Mobile's business needs and stated on the job descriptions. (ECF No. 1 ¶ 17-18, Ex. A at 149:15-25, 150:1-15, T-Mobile Ex. 15). A "qualified individual" is an individual who, with or without reasonable accommodation, can perform the essential functions of the position she sought or held. 42 U.S.C. § 12111(8). When scheduling flexibility is an essential function and an employee requires a permanent shift assignment, she is not a qualified individual. *E.E.O.C. v. United Airlines, Inc.*, No. 98-2076, 1999 WL 397390, at *4-6 (10th Cir. June 17, 1999) (employee was not a qualified individual because even with accommodations she could not participate in mandatory schedule rotation or heavy lifting, both of which were essential functions.)

All positions Plaintiff held in the Call Center required scheduling flexibility as an essential job function. (Ex. A at 9:16-25, 11:10-25, 12:1-16, 13:21-24, T-Mobile Ex. 19-21). The ADA does not require an employer to remove an essential function or create a new job position in order to accommodate an employee's disability. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004) ("We have consistently held, however, that an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation."); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1176 (10th Cir. 1999) (an employer need not create a new position to accommodate an employee.) The

scheduling flexibility function is essential because the sole purpose of T-Mobile Call Center employees is to assist customers, and customer needs evolve. (Ex. A at 149:15-25, 150:1-15, T-Mobile Ex. 15). T-Mobile did not have permanent part-time positions at the Call Center, nor did any employee remain in a particular shift permanently, because the shifts themselves often changed. (Ex. C at 12:16-24). Plaintiff could not work flexible, varied schedules, and therefore she was not a qualified individual.

### b. Plaintiff Suffered No Adverse Employment Actions.

Plaintiff cannot prove that T-Mobile took an adverse action against her. In general, only "acts that constitute a significant change in employment status . . . or a decision causing a significant change in benefits, will rise to the level of an adverse employment action. *Dick v. Phone Directories Co., Inc*., 397 F.3d 1256, 1268 (10th Cir. 2005). Plaintiff alleged that she was reprimanded and written up for FMLA and ADA covered absences, but she cannot identify specific dates of leave that resulted in an improper write-up. (Ex. A at 129:1-25, 130:1-7). Nor could she identify any alleged timekeeping issues that were not resolved. (Ex. A at 129:1-25, 130:1-7). Conclusory assertions, such as these, are insufficient to create a triable issue of fact. *Mackenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). Regardless, a write-up will only constitute an adverse action if it moves the employee closer to termination or impacts her employment opportunities. *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1137 (10th Cir. 2005). Plaintiff remained in good standing and suffered no specific consequences as a result of the write-ups. (Ex. A at 133:10-21, 131:13-21, 134:6-13, T-Mobile Ex. 5-7). Therefore, the write-ups were not adverse employment actions.

Plaintiff also alleged she suffered an adverse action in that Mr. Sosa "discouraged her from trading shifts" with other employees.  (Ex. A at 21:11-16). However, she conceded that Mr. Sosa never forbade her from trading shifts. (Ex. A at 24:1-25). At most, he told her that he did not believe a shift swap would be successful. (Ex. A at 21:11-16). Plaintiff could have put her name in the book anyway. (Ex. A at 23:11-17). However, even if Mr. Sosa had prevented her from trading shifts, a denial of a shift change request does not constitute an adverse employment action.[1] *Peru v. T-Mobile USA, Inc.*, 897 F. Supp. 2d 1078, 1096 (D. Colo. 2012).

Plaintiff alleged that she was not permitted to bid for shifts when she transferred to TEX. However, Plaintiff has presented no evidence that she was treated differently from other employees transferring into TEX, and Plaintiff conceded that she was not guaranteed her desired shift at the time she transferred. (Ex. A at 140:1-11).

In a conclusory manner, Plaintiff alleged that T-Mobile refused to promote her because of her protected leave. (Ex. A at 46:4-23). However, Plaintiff has presented no evidence to show she was qualified for the position she sought, that her leave was considered in the decision-making process, or that she was more qualified that the individual who received the position. *Id.*

Plaintiff also cannot show that she was constructively discharged. An individual is constructively discharged when her working conditions are so intolerable that, when viewed objectively, a reasonable person would feel *compelled* to resign. *Yearous v. Niobrara Cty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997). She must show that she had no "free choice regarding [her] employment relationship." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130 (10th

---

[1] At this time, Plaintiff had no ADA accommodation request pending for an alternative shift. (Ex. D at 26:6-19).

Cir. 2004). A Plaintiff's frustration in her inability to obtain a desired shift, coupled with her bare assertion that her work environment became intolerable due to ADA and FMLA "harassment," does not serve as a basis for a constructive discharge claim. *Peru,* 897 F. Supp. 2d 1078.

Moreover, courts will not find that an individual has been constructively discharged when "the parties have made recent progress on reaching a mutually-acceptable solution to a significant number of the employee's ongoing complaints" and there is no "significant intervening negative event" after such progress. *Peru*, 897 F. Supp. 2d at 1094. Plaintiff was allowed to transfer to TEX and accepted a temporary assignment to the Weekend Wrap. (Ex. C at 35:6-24; Ex. A at 149:15-25, 150:1-15, T-Mobile Ex. 15). Plaintiff then went on a two and one-half month continuous leave, having never utilized the temporary Weekend Wrap assignment, and resigned almost immediately upon her return to the Call Center without experiencing an intervening negative event. *Id.* The facts do not depict a work environment that was so objectively intolerable that a reasonable person would have felt *compelled* to resign.

        c.        **T-Mobile Has Legitimate Nondiscriminatory Reasons for its Decisions For Effective Employee Management and Efficient Call Center Operations.**

T-Mobile has offered legitimate justifications for its policies and actions. Attendance and scheduling matters are within a business' authority to manage, and regular attendance may be deemed an essential job function. *See e.g. Punt v. Kelly Servs.*, 862 F.3d 1040, 1051 (10th Cir. 2017) ("attendance in the workplace is itself an essential function of most jobs.")

        d.        **Plaintiff Cannot Show that T-Mobile's Proffered Legitimate Nondiscriminatory Reasons Were Pretext for Discrimination.**

Because T-Mobile has offered legitimate nondiscriminatory reasons for all actions taken, Plaintiff must show those reasons were pretextual. *Swackhammer v. Sprint/United Mgmt. Co.*,

493 F.3d 1160, 1167 (10th Cir. 2007). Plaintiff cannot show that T-Mobile's reasons were pretextual, because she cannot show the reasons were implausible, inconsistent, incoherent or contradictory. *Borandi v. All. for Sustainable Energy, LLC*, No. 13-cv-02026-RM-MJW, 2015 U.S. Dist. LEXIS 60786, *32 (D. Colo. May 8, 2015). The bulk of Plaintiff's allegations are based on her subjective beliefs that she was discriminated against and conclusory allegations supporting the same, assertions which cannot bolster a claim to survive summary judgment. *Id.*

The facts are undisputed. T-Mobile never denied a leave request from Plaintiff, whether it be under the FMLA or the ADA. Her shift assignments were managed through T-Mobile's ordinary business processes and practices, including performance-based shifts and full-time shifts and schedule flexibility that T-Mobile's customer needs demanded. T-Mobile investigated and addressed Plaintiff's one complaint related to Angel Sosa, and Plaintiff's speculative skepticism about the future efficacy of that investigation does not create a genuine issue of disputed fact. Plaintiff was given a temporary assignment to her desired shift but took a lengthy continuous leave without working that shift at all, and abruptly resigned her second day back from leave. Plaintiff simply cannot identify a genuine issue of disputed material fact as to her discrimination claim, and summary judgment for T-Mobile is appropriate.

## II.     Plaintiff Cannot Show That T-Mobile Failed to Accommodate Her.

Plaintiff's failure to accommodate claim fails because T-Mobile fully met its legal obligations to engage in the interactive process and provide reasonable accommodation if needed.[2]  Employers are not compelled to grant specific accommodation requests and need only

---

[2] As stated in section I(a), *supra*, T-Mobile does not contest, for purposes of this Motion, that Plaintiff was disabled. However, Plaintiff was not a qualified individual with a disability.

provide *a* reasonable accommodation. *Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249 (10th Cir. 2001). Because T-Mobile accommodated all of Plaintiff's leave of absence requests and granted Plaintiff a temporary assignment to the Weekend Wrap, Plaintiff's claim can *only* be based on her assertion that T-Mobile refused her request for a permanent reduced shift or permanent shift assignment. These requests were unreasonable.

Plaintiff purportedly sought a permanent assignment because she believed she would require less leave and would avoid leave-based harassment. (Ex. A at 149:15-25, 150:1-15, T-Mobile Ex. 15). T-Mobile was not obligated to accommodate Plaintiff so that she could avoid FMLA use and purported leave-based harassment. *Santacrose v. CSX Transp., Inc.*, 288 F. App'x 655, 657 (11th Cir. 2008) (employee sought a permanent reduced schedule so he would not be required to use FMLA to avoid overtime, but company lawfully declined his requested accommodation because existing policy of allowing FMLA leave was a reasonable accommodation). A plaintiff's claim for failure to accommodate fails if the plaintiff sought the accommodation to avoid discrimination or harassment because the ADA contemplates accommodations that arise from limitations *caused by a disability*. *Hamel v. Bd. of Educ. of Harford Cty.*, No. CV JKB-16-2876, 2018 WL 1453335, at *14 (D. Md. Mar. 23, 2018) (plaintiff's request to transfer to "avoid further conflict and further violations of the law" could not give rise to a failure to accommodate claim because the accommodation would not address a disability-caused limitation). Regardless, T-Mobile investigated Plaintiff's complaints, took appropriate action, and allowed her to transfer to a new team away from Mr. Sosa. (Ex. A at 33:2-13; Ex. C at 49:8-23; 51:4-12).

Plaintiff's claim also fails because she withdrew her accommodation request in favor of a continuous leave of absence. (Ex. D at 21:17-25, 22:1-25, Birch Ex. 11). Although T-Mobile generally does not allow employees to circumvent the shift-bid procedure, Plaintiff was permitted to submit to her request for the Weekend Wrap. *Id*. Plaintiff never submitted medical documentation substantiating her need for a particular shift, but nevertheless, T-Mobile accommodated Plaintiff with a thirty (30) day assignment to the Weekend Wrap until the next shift bid. Plaintiff accepted T-Mobile's accommodation, and she had no pending accommodation requests at the time of her resignation. Plaintiff's failure to accommodate claim fails.

### III. Plaintiff Cannot Establish a Claim for ADA Retaliation.

#### a. Plaintiff Cannot Establish the *Prima Facie* Claim for ADA Retaliation, Because She Cannot Show that T-Mobile Took Adverse Actions Against Her, and Even if She Could, She Cannot Establish the Requisite Causation.

Plaintiff's retaliation claim fails because she cannot prove she suffered an adverse action nor can she establish causation between protected conduct and an adverse action. As noted above in the context of Plaintiff's discrimination claim, none of Plaintiff's complaints amounts to an adverse action, nor can she prove constructive discharge. (*See* Argument I(a)(ii)).

Plaintiff also cannot satisfy the causation standard, because to do so, she must show that her protected activity was the "but-for" cause of her suffered adverse action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). When an employee suffers an adverse action three or more months after she engaged in protected activity, courts in this Circuit will not infer a causal connection. *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

In March of 2018, Plaintiff complained to Mr. Whitaker that she felt that she had been discriminated against. (Ex. A at 32:1-25). T-Mobile investigated Plaintiff's complaints and took

corrective action. (Ex. A at 33:2-13; Ex. C at 49:8-23). On September 13, 2018, Plaintiff complained to Mr. Davis that she needed the Weekend Wrap schedule due to her disability and alleged that she had been treated poorly due to her FMLA and ADA use. (Ex. A at 149:15-25, 150:1-15, T-Mobile Ex. 15). Plaintiff acknowledged that T-Mobile addressed her complaints of harassment, but stated she believed harassment would continue. *Id.* Far from being retaliatory, Mr. Davis offered Plaintiff a 30-day Weekend Wrap schedule until the next mini-bid. *Id.* Rather than work the schedule, Plaintiff immediately took a two and one-half month continuous leave of absence, during which time she had little to no contact with T-Mobile and it appeared she would return without issue. *Id.* Plaintiff returned to work and resigned the next day. (Ex. C at 64:13-2).

In her Complaint, Plaintiff alleged that she was constructively discharged because she could not obtain a permanent reduced schedule and had exhausted her FMLA leave, and that T-Mobile forced her to resign because she complained about discrimination and retaliation. (ECF No. 1 ¶ 35, 46). The temporal connection between Plaintiff's protected activity and her purported constructive discharge is too attenuated. Plaintiff complained to Mr. Whitaker approximately nine (9) months before her resignation, and she complained to Mr. Davis nearly three (3) months before her resignation. (Ex, A at 32:1-25, T-Mobile Ex. 2, 14). Both Plaintiff's complaints were based on the same alleged incident of harassment, as evidenced by Plaintiff's assertion that she believed the issue would continue notwithstanding T-Mobile's corrective action. (Ex. A at 149:15-25, 150:1-15, T-Mobile Ex. 15). Plaintiff has presented no evidence to show that her purported constructive discharge—even if she could prove constructive discharge—would not

have occurred but-for her protected activity. Thus, Plaintiff cannot make out a *prima facie* case of ADA retaliation.

### b.   Plaintiff Cannot Show that T-Mobile's Legitimate Nondiscriminatory Reasons Were Pretextual.

As detailed above, T-Mobile has offered legitimate nondiscriminatory reasons for all actions taken. For the same reasons that Plaintiff cannot show pretext in the context of her discrimination claim, she cannot show pretext in the context of retaliation. *See Argument* I(d). Plaintiff's subjective beliefs are irrelevant, and her conclusory assertions are insufficient to demonstrate pretext. *Borandi v. All. for Sustainable Energy*, LLC, No. 13-cv-02026-RM-MJW, 2015 U.S. Dist. LEXIS 60786, *32 (D. Colo. May 8, 2015).

## IV.   Plaintiff Cannot Establish a Claim for FMLA Retaliation Or Interference.

Plaintiff has not presented the prima facie case of FMLA retaliation. To establish the prima facie case, Plaintiff must show that: (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1322 (10th Cir. 1997). To satisfy the third prong, Plaintiff must show bad intent or retaliatory motive attributable to T-Mobile. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).

As discussed above, Plaintiff did not suffer an adverse employment action. Plaintiff continued to exercise her rights under FMLA and was granted every leave she requested. (Ex. A at 67:9-15). Plaintiff has presented no evidence to show that T-Mobile acted with bad faith or a retaliatory intent, and her claim fails as a matter of law.

Plaintiff's Complaint does not allege FMLA interference as a separate claim for relief, but she asserts that T-Mobile interfered with her FMLA rights. (ECF No. 1 ¶ 50). T-Mobile granted all of Plaintiff's FMLA leave of absence requests. Although Plaintiff alleges that she exhausted her leave at the time of her resignation, she does not allege that T-Mobile prevented her from later utilizing newly-accrued leave. Because Plaintiff was always permitted to accrue, use, and exhaust FMLA leave, Plaintiff cannot show that T-Mobile interfered with her right to take leave.  *DeFreitas v. Horizon Inv. Mgmt. Corp.*, 577 F.3d 1151, 1159 (10th Cir. 2009).

## CONCLUSION

Plaintiff has not identified a triable issue of material fact with respect to any of her claims, and T-Mobile respectfully requests that the Court grant this Motion for Summary Judgment and enter judgment for T-Mobile on all claims.

Respectfully submitted, this 14th day of August, 2020.

>*s/ Brooke A. Colaizzi*
>Brooke A. Colaizzi
>Carissa J. Davis
>SHERMAN & HOWARD L.L.C.
>633 Seventeenth Street, Suite 3000
>Denver, CO 80202
>Tel: (303) 297-2900/Fax: (303) 298-0940
>Email: bcolaizzi@shermanhoward.com
>         cdavis@shermanhoward.com
>
>ATTORNEYS FOR DEFENDANT T-MOBILE USA, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2020, I electronically filed the foregoing **T-MOBILE'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Sara A. Green
Bachus & Schanker, LLC
101 W. Colfax Ave., Suite #650
Denver, CO 80202
Sara.green@coloradolaw.net

                                                  *s/ Laura J. Kostyk*
                                                  Laura J. Kostyk, Legal Secretary